```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2
                     WEST PALM BEACH DIVISION
 3
                   CASE NO:   22-cr-80022-AMC
 4

 5

 6
    UNITED STATES OF AMERICA,      )
 7                                 )
              Plaintiff,           )
 8  v.                             )
                                   )              June 21, 2023
 9  DANIEL M. CARVER, et al.,      )
                                   )              Pages 1 - 75
10            Defendants.          )
    _____/
11

12

13

14              GARCIA HEARING AND ARRAIGNMENTS

15                        (Via Zoom)

16         BEFORE THE HONORABLE RYON M. MCCABE
                UNITED STATES MAGISTRATE JUDGE
17

18

19

20  APPEARANCES:

21
    On behalf of the Plaintiff:
22
                    UNITED STATES DEPARTMENT OF JUSTICE
23                  Fraud Section, Criminal Division
                    1400 New York Avenue, NW
24                  Bond Building 4th Floor
                    Washington, DC 20005
25                  BY:  PATRICK J. QUEENAN, AUSA
                    BY:  REGINALD CUYLER, AUSA
```

APPEARANCES CONTINUED:


Counsel on behalf of Defendant Daniel M. Carver:

                FELDMAN FIRM PLLC
                Miami Southeast Financial Center
                200 South Biscayne Boulevard
                Suite 2790,
                Miami, FL 33131
                BY:  ANDREW S. FELDMAN, ESQ.



Counsel on behalf of Defendant Thomas Dougherty:

                STEVEN H. SADOW PC
                260 Peachtree Street NW
                Suite 2502,
                Atlanta, GA 30303
                BY:  STEVEN H. SADOW, ESQ.



Counsel on behalf of Defendant John P. Gosney, Jr.:

                BLACK SREBNICK, P.A.
                201 South Biscayne Boulevard
                Suite 1300,
                Miami, FL 33131
                BY:  ALYSSA L. SILVAGGI, ESQ.
                BY:  HOWARD M. SREBNICK, ESQ.
                BY:  EDWARD J. ARMELLINO, ESQ.



Counsel on behalf of Defendant Louis Carver:

                LOWTHER WALKER LLC
                101 Marietta Street NW,
                Suite 33,
                Atlanta, GA 30303
                BY:  JOSHUA S. LOWTHER, ESQ.

```
1
     APPEARANCES CONTINUED:
2

3    Counsel on behalf of Defendant Jose Goyos:

4                    FEDERAL PUBLIC DEFENDER'S OFFICE
                     250 South Australian Avenue
5                    Suite 400,
                     West Palm Beach, FL 33401
6                    BY:  ROBERT ADLER, AFPD
                     BY:  CAROLINE MCCRAE, AFPD
7

8

9
     Transcribed by:
10
                     BONNIE JOY LEWIS, R.P.R.
11                   7001 SW 13 Street
                     Pembroke Pines, FL  33023
12                   954-985-8875
                     caselawrptg@gmail.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
 1              (Thereupon, the following proceeding was held:)
 2              THE COURTROOM DEPUTY:  All rise.  The United States
 3   District Court in and for the Southern District of Florida is
 4   now in session.  The Honorable Ryon McCabe presiding.
 5              THE COURT:  Good afternoon, everyone.  You can have a
 6   seat.
 7              All right.  We are here in the case of United States
 8   of America versus Carver, et al.  We have some people in the
 9   courtroom and some are by Zoom.
10              So let's start with appearances first.
11              For the Government, who is here?
12              MR. QUEENAN:  Good afternoon, Your Honor.
13              Patrick Queenan and Reginald Cuyler, Jr. from the
14   Fraud Section for the Government.
15              THE COURT:  Okay.  And just so we don't talk over each
16   other, I am just going to ask for appearances.  I will just go
17   down the list of Defendants.
18              So first for Daniel Carver, who is here?  And if your
19   client is with you, please announce that as well.
20              MR. FELDMAN:  Good afternoon, Your Honor.
21              Andrew Feldman on behalf of a Daniel Carver who is not
22   present before Your Honor because I believe Mr. Carver is
23   detained in the Fort Pierce County Jail.
24              THE COURT:  Okay.  All right.  For Thomas Dougherty?
25              MR. SADOW:  Good afternoon, Your Honor.
```

1          This is Steve Sadow for Mr. Dougherty and Mr.

2    Dougherty is also via Zoom.

3          THE COURT:  Okay.  Dougherty.  I am sorry I

4    mispronounced that.

5          All right.  For Mr. Gosney or Gosney.

6          MS. SILVAGGI:  Yes, it is Gosney, Your Honor.

7          Alyssa Silvaggi, Edward Armellino, and Howard Srebnick

8    on behalf of Mr. Gosney.  Mr. Gosney is also present via Zoom.

9          THE COURT:  Okay.  Thank you.

10         MR. SREBNICK:  Just to clarify, Howard Srebnick.  I am

11   his appellate counsel.  I do not have an appearance as trial

12   counsel.

13         THE COURT:  All right.  Thank you.

14         And then, for Mr. Louis Carver?

15         MR. LOWTHER:  Good afternoon, Your Honor.

16         Joshua Lowther for Louis Carver.  Mr. Louis Carver is

17   present by video.

18         THE COURT:  All right.  And then, Mr. Goyos.

19         MR. ADLER:  Good afternoon, Your Honor.

20         Robert Adler and Caroline McCrae on behalf of Jose

21   Goyos who is present before the Court.

22         THE COURT:  Okay.  Excellent.

23         All right.  So we are here on two matters.  The first

24   is a continuation of the Garcia hearing that we began last week

25   because after we broke, it occurred to me that there is

 1   something that I did want to clarify and so this I guess is for

 2   Mr. Lowther.

 3         During the hearing last week we sort of focused on the

 4   conflict, or potential conflict, or actual conflict that would

 5   arise in the event Miss Sztyndor became a trial witness.

 6         And one question that occurred to me after we broke

 7   was if she does not become a trial witness, do you then view

 8   yourself as having a potential or actual conflict?  If so,

 9   which one?  And if so, is that a conflict that your client

10   wishes to waive?  So can you speak to that first?

11         MR. LOWTHER:  Your Honor, briefly, my answer to that

12   question last week would have been, no, there would be no

13   actual or potential conflict.

14         Today I believe that there would be no actual conflict

15   with the caveat that the Defendants obviously did not call her

16   in support of an advice of counsel defense.  The Defendants did

17   not call her in support of a good faith defense.  And of

18   course, the Government would not be able to call her if the

19   Court ultimately decides that the crime fraud exception

20   applies.

21         THE COURT:  Well, I guess what I am hearing, then ,

22   does it then simply boil down to whether or not she becomes a

23   trial witness, essentially.

24         So if she is a trial witness you have a conflict.  If

25   she is not a trial witness, you don't view yourself as having

 1  an actual conflict is that fair?

 2        MR. LOWTHER:  That's correct.

 3        THE COURT:  All right.  So if she does not become a

 4  trial witness, do you view yourself as having a potential

 5  conflict?

 6        MR. LOWTHER:  I do not.

 7        THE COURT:  All right.  If I found that there was a

 8  potential conflict is that a conflict that your client would

 9  like to waive?

10        MR. LOWTHER:  He will not waive, Your Honor.

11        THE COURT:  All right.  So what I would like to do,

12  then, is have some further inquiry from him so that I can sort

13  of get him on the record sort of fleshing out and clarifying

14  his wishes to the extent that if Miss Sztyndor is not a trial

15  witness.

16        That is what I would like to do.  So do you have any

17  objections to that first of all?

18        MR. LOWTHER:  No, Your Honor, I don't.

19        THE COURT:  All right.  Government, do you have any

20  position on any of the questions that I just asked before I put

21  Mr. Louis Carver under oath and make some inquiry of him?

22        MR. QUEENAN:  Briefly, Your Honor.

23        We see it the same way that Attorney Lowther has

24  articulated it that if Miss Sztyndor is not a witness, then,

25  Mr. Lowther does not have a conflict that we are aware of.

1          THE COURT:  Okay.  Well, let me ask you this.

2          To the extent that he has an ongoing attorney/client

3   relationship with Miss Sztyndor and at least one of the other

4   co-defendants, two of the other co-defendants have chosen to

5   make an advice of counsel defense, but his client has not.

6          Is there a potential conflict that because he might

7   have divided loyalties between Mr. Louis Carver and/or Miss

8   Sztyndor?

9          And I am not saying that this is true, but is there a

10  potential conflict that perhaps he is not making an advice of

11  counsel defense is that he owes some loyalty to Miss Sztyndor?

12         Is that a potential conflict?  I will ask you first,

13  Mr. Lowther?

14         MR. LOWTHER:  I believe that -- and I don't want to

15  jump ahead and not be responsive to your question, but what I

16  was thinking earlier when I gave the caveat is I am not aware.

17         Obviously the Court will rule as it will, but from my

18  perspective I am not aware of any reason based on the law where

19  the Court could prevent Mr. Dougherty or Mr. Gosney from

20  calling Miss Sztyndor either as in support of advice of counsel

21  defense or in support of a good faith defense.

22         So if that situation occurs, based on the reasons that

23  I presented to the Court *ex parte*, there would be an actual

24  conflict at that point.

25         THE COURT:  Well, there could be a situation.

1      I won't make these decisions.  Judge Cannon will, but

2  there could be a situation where the trial becomes severed in

3  some fashion and you end up representing your client in some

4  trial where Miss Sztyndor is definitely not going to be a

5  witness.

6      Are you saying in that situation there's nothing that

7  we need to put on the record about your client waiving any

8  potential conflict of interest based upon your concurrent

9  representation of her?

10      MR. LOWTHER:  In that situation there would be no

11  conflict at all.  Meaning, and I am not assuming what the

12  Court's remedy will be, but if for example, based on Your

13  Honor's comment, if the Court determines that severance of Mr.

14  Louis Carver is appropriate, then of course Mr. Carver would

15  subsequently go to trial alone with me.

16      We would not present the advice of counsel defense and

17  there is no reason Miss Sztyndor would be involved in that

18  proceeding.  There I would not have a conflict, potential or

19  actual.  And I am sure Mr. Louis Carver would agree, although

20  certainly the Court can inquire.

21      THE COURT:  All right.  Government, any position on

22  that?

23      MR. QUEENAN:  Thank you, Your Honor.

24      Just to make the record clear, because you asked a

25  question about whether there was a conflict in Attorney

1   Lowther's representation of Mr. Carver with regard to whether

2   Mr. Carver would assert an advice of counsel defense and,

3   therefore, like has it because of that conflict.

4           My understanding is that Mr. Carver asserted no

5   privilege over communications with Attorney Sztyndor or any

6   other attorneys involved in this case.  So I don't think that

7   would be an issue.

8           We don't believe -- and I don't know if severance, as

9   Your Honor said, if that issue does rise and go to Judge

10  Cannon, you know, we don't believe it is appropriate by ten

11  different ways that we can resolve this without severance.

12          But, in the event there was severance, it would likely

13  moot out this issue because the severance would be with a trial

14  that would likely have Danny Carver, Louis Carver, and Jose

15  Goyos severing out, you know, if there is truly an antagonistic

16  defense with Mr. Dougherty and Mr. Gosney.

17          THE COURT:  I see.  So your view is that there could

18  not be an actual or potential conflict.  I am assuming this is

19  all in a world where Miss Sztyndor is not testifying at trial

20  and in that situation Attorney Lowther has no conflict either

21  potential or actual because all right Louis Carver never had an

22  attorney/client relationship with Miss Sztyndor and, therefore,

23  would never have the option of using the advice of counsel

24  defense.

25          Did I state that accurately?

1          MR. QUEENAN:  That's my understanding.  Although you

2   and Mr. Lowther can correct me if I'm wrong.

3          THE COURT:  Okay.  Mr. Lowther.

4          MR. LOWTHER:  There was no privilege between Mr. Louis

5   Carver and Miss Sztyndor.

6          THE COURT:  Okay.  All right.  Then what I think what

7   I would like to do is just since we are here and we have Mr.

8   Louis Carver here, let's go ahead and put him under oath just

9   so I can ask these questions so we don't have to do this again.

10         THE COURTROOM DEPUTY:  Louis Carver, please raise your

11  right hand.

12         THE DEFENDANT:  (Complied.)

13  (Defendant sworn.)

14         THE COURTROOM DEPUTY:  Please state your name for the

15  record.

16         THE DEFENDANT:  Louis Carver.

17         THE COURT:  All right.  Mr. Carver, good afternoon.

18         We were here last week and I asked you some questions.

19  I want to ask you some additional questions to sort of clarify

20  some points from last week.

21         And as I explained to you last week, your choice of

22  counsel in this case is extremely important.  And I want to

23  make you aware of some issues that may potentially arise and

24  just to make sure I understand what your decision is about

25  that.  Our system wants you to make an informed decision about

1   your choice of counsel.  But, of course, if you make a poor,

2   but a fully informed decision, you have to live with the

3   consequences of that choice.

4        It is my job to make sure that you are making a fully

5   informed choice.  And although the Court recognizes that a

6   Defendant's interest to have counsel, the Court recognizes that

7   Defendants have an interest in the counsel of their choice, but

8   that choice is not absolute and the orderly administration of

9   justice can overcome that right where there is either an actual

10  or potential conflict with counsel.

11       The Court has an independent interest in ensuring that

12  criminal trials are conducted within the ethical standards of

13  the profession and that legal proceedings appear fair to all

14  who observe them.  Thus, maintaining public confidence in the

15  courts.

16       I will also let you no that independent counsel is

17  available to you.  And by independent, I mean counsel other

18  than Mr. Lowther to assist you in making the choice whether to

19  continue with Mr. Lowther as your counsel in this case.

20       So last week I asked you some questions to determine

21  your competency.  For the record, I am going to rely upon the

22  answers that you gave last week.  Let me clarify for today's

23  purposes within the past 24 hours, have you consumed any drugs,

24  alcohol, or medications of any kind, legal or illegal?

25            THE DEFENDANT:  No.

1        THE COURT:  Okay.  Are you feeling clear-headed today?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Do you feel like you understand everything

4   that is going on around you?

5        THE DEFENDANT:  Yes, I do, Your Honor.

6        THE COURT:  Okay.  Based upon my observations of the

7   Defendant, as well as his answers to my questions last week and

8   his answers to my questions today, I find that he is alert,

9   competent, and capable of making decisions today.

10       So as you know, you have been charged in this case

11  that has very serious charges of health care fraud.  You have

12  the right under our Constitution to effective assistance of

13  counsel.

14       When one lawyer represents two or more people in any

15  situation, it is possible that there will be conflicts of

16  interest because that lawyer will have divided loyalties

17  between the two different clients.

18       In a criminal case you have the right to a zealous

19  advocate who represents you and only you and has only your best

20  interests in mind.

21       Last week I posed to you several questions where it

22  was possible that Robyn Sztyndor would testify as a witness in

23  your upcoming trial.  And as you know, your attorney has an

24  ongoing attorney/client relationship with Robyn Sztyndor as

25  well as a past attorney/client relationship with Robyn

1  Sztyndor.

2          And you made it clear to me that if that were to

3  happen, you would not waive any conflict of interest that your

4  attorney might have in the event Miss Sztyndor became a trial

5  witness, correct?

6          THE DEFENDANT:  Correct.

7          THE COURT:  All right.  I am now going to ask you, I

8  am going to clarify whether or not you are willing to waive

9  that conflict of interest, or potential conflict of interest in

10  the event Robyn Sztyndor does not become a trial witness.

11          In other words, it is possible -- I'm not saying that

12  there is an actual conflict, but there could be a potential

13  conflict of interest that your attorney might have because he

14  has divided loyalties between Robyn Sztyndor and you that might

15  exist even if she doesn't testify at trial.  And it is

16  possible, although I don't know, but it is possible that that

17  divided loyalty has influenced his representation of you in

18  this case.

19          I will give you an example.  For example, it is

20  possible that because he has divided loyalties between you and

21  Miss Sztyndor, he may have made decisions in the investigation

22  of your case that have effected your case.

23          Do you understand that?

24          THE DEFENDANT:  Uh-huh.  Uh-huh.

25          THE COURT:  You have to say yes or no.

1    THE DEFENDANT:  Yes.  Yes.

2    THE COURT:  Okay.  It is possible that he may have

3 made strategy decisions that may have impacted your case

4 because he has these potentially divided loyalties between you

5 and Miss Sztyndor.

6    Do you understand that?

7    THE DEFENDANT:  Yes.

8    THE COURT:  It is possible that when the case -- we've

9 already discussed if she becomes a witness, but it is possible

10 that this could continue all the way to the sentencing phase.

11    That in the event there were a conviction, you know,

12 and the issue of your sentencing becomes before the District

13 Court, he may make decisions about the strategy in sentencing

14 that are effected by his divided loyalties.

15    Do you understand that is a possibility?

16    THE DEFENDANT:  Yes.

17    THE COURT:  Okay.  So let me ask you this, then.

18    Well, first of all, to Mr. Lowther, without getting

19 into the details of any discussions, have you discussed with

20 your client, you know, the issue of your past representation of

21 Miss Sztyndor and the potential that it has on your

22 representation of your client in this case?

23    MR. LOWTHER:  I have, Your Honor.

24    THE COURT:  Okay.  All right.  Mr. Carver, let me ask

25 you this question.

1           Recognizing that your attorney has had this past and

2    ongoing representation with Miss Sztyndor, if she does not

3    become a witness in the upcoming case, do you nevertheless

4    consent to have Mr. Lowther continue to represent you in this

5    case despite his potential for a conflict of interest?

6           THE DEFENDANT:  Well, yes, I still would want him to

7    represent me.  But, I mean, at the same time I am still

8    skeptical due to their relationship.

9           THE COURT:  Well, that's why we are having this

10   conversation, sir.

11          THE DEFENDANT:  Right.

12          THE COURT:  So my understanding has been that as long

13   as she does not become a trial witness, you are comfortable

14   with having Mr. Lowther continue to represent you.

15          Is that what I am hearing?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And so to the extent that there are these

18   potential conflicts that might exist and I don't know for sure

19   if there is a conflict or not, but to the extent there is a

20   potential conflict, you are willing to waive that conflict as

21   long as she doesn't become a witness in the trial.

22          Is that what I am hearing you say?

23          THE DEFENDANT:  Well, I am not willing to waive the

24   conflict if, you know, if she does become a witness because of

25   the fact that he would definitely take it a lot easier on her

1  than he would on me due to their past relationship.

2          THE COURT:  Right.  I got that.  But my question is a

3  little more subtle and a little different.

4          THE DEFENDANT:  Right.

5          THE COURT:  My question is if she never becomes a

6  trial witness you are willing to have him to continue to

7  represent you despite the potential that he may have been

8  making decisions all along in your case that might be impacted

9  by the fact that he previously represented her.

10         THE DEFENDANT:  I do not wish to waive the conflict,

11  no.

12         THE COURT:  You do not wish to waive that conflict?

13         THE DEFENDANT:  No.

14         THE COURT:  Okay.  All right.  Now, have you had the

15  opportunity to consult with independent counsel about this

16  decision?

17         THE DEFENDANT:  No.

18         THE COURT:  An attorney other than Mr. Lowther?

19         THE DEFENDANT:  No.

20         THE COURT:  All right.  You recognize that you have

21  the opportunity to consult with independent counsel if you

22  wish, right?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Okay.  All right.  That is all I have for

25  you, Mr. Carver.  I appreciate you answering my questions.

1       Mr. Lowther, do you believe any further inquiry needs

2  to be made of your client, or would you like me to ask him

3  anything else, or would you like to ask him anything?

4       MR. LOWTHER:  No, Your Honor.

5       THE COURT:  All right.  Government, do you think that

6  any further inquiry needs to be made of Mr. Louis Carver?

7       MR. QUEENAN:  Not at this time, Your Honor.

8       THE COURT:  Okay.  All right.  That concludes my

9  continuation of the Garcia hearing.

10      What I would like to do now is turn to the next motion

11  that Judge Cannon has referred to me and that's Docket Entry

12  589, the Government's motion to preclude introduction of

13  certain evidence.  So I will turn it over to the Government and

14  let's hear argument on that.

15      MR. QUEENAN:  Thank you, Your Honor.

16      The Government has filed in motion primarily because

17  the Defendants Mr. Gosney and Mr. Dougherty have asserted

18  advice of counsel defenses as required to by a certain deadline

19  under Judge Cannon's order, but have done so deficiently.

20      And the law requires not that you can select a

21  self-serving and limited waivers on which communications you

22  want to release allowing you to use the attorney/client

23  privilege as a sword and shield, but instead it requires that

24  you make a subject matter waiver.

25      And in fact, you know, this is an issue that has come

1    up frequently in this district.  And Mr. Dougherty's counsel,

2    Mr. Sadow and the Government dealt with this recently in front

3    of Judge Ruiz in the *Patel* case.

4         And in fact, Mr. Sadow's client signed a subject

5    matter waiver and the Government was able to investigate and

6    interview attorneys that Mr. *Patel* relied on.  Attorneys that

7    Mr. *Patel* consulted with on the same issues and may not have

8    relied on and was able to fully investigate this.

9         And so, in this case, the waivers are deficient

10   because there are two of four lawyers that were consulted

11   during the conspiracy period.  And according to privilege logs

12   and the limited information that the Government has from those

13   privilege logs, there are four lawyers that advised Mr.

14   Dougherty and Mr. Gosney along the way with regard to their

15   ownership and operation of these call centers and laboratories.

16        And that was Attorney Cohen, Attorney Molle; I

17   believe, M-O-L-L-E.  And then, of course, Attorney Sztyndor and

18   Attorney Fousek who they have waived for.  And so in the first

19   instance what we are asking, Your Honor, is either preclude

20   them because it is an inefficient waiver -- I'm sorry.

21        It is a defective waiver incomplete or because we are

22   running out of time and immediately give them the option to

23   immediately assert a proper subject matter waiver, which would

24   allow the Government to interview, if they so choose, to sit

25   with us and speak with us.  Those four attorneys issued trial

1    subpoenas to compel the production of the documents and written

2    communications that were exchanged and to fully investigate

3    this.

4         That's the first issue in the motion.  Somewhat

5    related, although it appears to have been somewhat resolved

6    based on the response from Mr. Carver, is Mr. Carver seemed to

7    have kind of danced the line of advice of counsel defense and

8    good faith defense.

9         THE COURT:  Before you go to that, let's stick with

10   the subject matter issue.  So how do I determine -- let's say

11   that these Defendants consulted other lawyers on the same

12   subject matter.

13        I mean, right now all you have is the privilege log.

14   How do you know that it is the same subject matter or how would

15   I make that determination?

16        MR. QUEENAN:  Well, that's why we needed a more

17   detailed waiver.  The waiver has to be based on I am asserting

18   advice of counsel on these issues and, therefore, waiving

19   privilege with regard to communications and documents exchanged

20   with regard to those issues.

21        Indeed, in the *Patel* case, those issues were outlined,

22   you know, in a paragraph in terms of what they related to.  So

23   their advice of counsel defense is very limited just to one

24   topic.  Then, presumably, maybe it would be narrowed to a

25   single attorney or two attorneys, but if they are going to be

1  broadly relying on their advice of counsel for, you know, a

2  number of issues that are probative to their defense -- and

3  this all goes to intent, right?

4          And this is where the rubber is going to meet the road

5  at trial. It is going to be the biggest issue for the jury to

6  decide whether Mr. Dougherty and Mr. Gosney harbored the

7  criminal intent to commit fraud to commit the kickback offenses

8  and money laundering.

9          So if they are making a subject matter waiver, we have

10  a right to know did they get shop around? Did they talk to

11  some lawyers like Mr. Molle and Mr. Cohen earlier on and

12  received some advice that, hey, what you are doing is likely

13  going to be considered to be illegal. Well, that forms their

14  mental state and the jury is entitled to hear that if they are

15  going to assert the advice of counsel defense.

16          THE COURT: Go ahead.

17          MR. QUEENAN: I'm sorry.

18          THE COURT: I was going to ask like in terms of the

19  nuts and bolts, like in the *Patel* case, did Judge Reinhart or

20  somebody order the Defendants to write down in a paragraph this

21  is the subject matter of my waiver? I mean, how did you all

22  get to the bottom of that?

23          MR. QUEENAN: I actually believe we did it by

24  agreement. I'm not sure. I would have to defer to my

25  colleague Attorney Cuyler and Mr. Sadow on the call who may

1  have a better recollection of that, but my understanding is we

2  handled that by agreement.

3       Now, after they issued their waivers in this case on

4  the docket, we reached out to both Mr. Gosney and Mr.

5  Dougherty's counsel and asked for that subject matter waiver.

6  And the response we received is we have complied with the

7  aspects of the Court's order.  We only need to tell you the

8  attorneys and we did it at the deadline the Court set and

9  that's not the law.

10       And you know, we were hoping to be able to negotiate

11  that with counsel, but their position is they don't -- at this

12  point my understanding is their position is saying we don't

13  need to give you that information and make that detailed

14  waiver.  We've complied with Judge Cannon's order and that's

15  not complying with the law.

16       THE COURT:  Okay.  All right.  Well, let me break it

17  up this way.  Before we move off of this subject matter issue

18  let me go to the Defense and I will return to the other, you

19  know, portions of your motion.

20       But who would like to speak to this on behalf of the

21  Defense and what we are talking about here is basically does

22  the waiver that goes with the advice of counsel defense, does

23  it ride to the specific attorney that's giving the advice or

24  does it ride the subject matter?  And if I decide it is the

25  subject matter, well, then how do I figure out what is the

1  subject matter and whether there are other lawyers who gave

2  advice on that subject matter?

3          So whoever wants to speak first.

4          MR. SADOW:  Alyssa, do you want me to go first?

5          MS. SILVAGGI:  Sure.

6          MR. SADOW:  Okay.  Your Honor, this is Steve Sadow for

7  Mr. Dougherty speaking I think for Gosney and Dougherty,

8  although, Gosney's counsel may add to it.

9          First, if I might, I was lead counsel on the *Patel*

10 case.  So I can tell the Court that was reached via agreement.

11 In fact, we waived -- the Government didn't think it was far

12 enough.  We negotiated with the Government.  We came to terms

13 and agreed upon it.  It was not Court directed or instructed.

14         THE COURT:  Okay.

15         MR. SADOW:  So it is not based on the law, *per se*.  It

16 is based on what the parties consented to.  Now, changing it to

17 this case, both Gosney and Dougherty attempted to follow the

18 Court's order.  That is Judge Cannon's order.

19         The Judge said by a certain date you are to indicate

20 the names of the lawyers that you would rely upon and we have

21 done that.  And that the waiver must be complete and we have

22 agreed to waive all communications with Miss Sztyndor and Mr.

23 Fousek.

24         So to the extent that we have complied with the

25 Court's direction, we complied with the Court's order.  And the

1   issue about the scope of the waiver was not dealt with by Judge

2   Cannon, but our waiver is total as to these two attorneys.

3          So now moving to subject matter.  The issue here is

4   not whether other attorneys might have been used during the

5   period.  The issue is whether or not we sought legal advice on

6   the legality of our conduct from other lawyers.  And the answer

7   to that, as we have already said in our response, is we did

8   not.

9          Now, the Government has brought up another motion

10  about documents that were prepared by other lawyers, but that

11  has nothing to do with the legality of the conduct.  The

12  legality of the conduct what we are relying on, and will seek

13  to present to the jury through the two attorney potential

14  witnesses, is whether or not the conduct violated health care

15  fraud laws or whether it violated the anti kickback laws.

16         And we are not relying on anything that we received

17  from Mr. Molle or Mr. Cohen because we didn't seek any advice

18  from them on those issues.  If I were to characterize it, not

19  entirely accurate, but they were more business attorneys than

20  they were attorneys that gave legal advice.

21         Now it still covered, but our waiver is complete.

22  Just because there were other attorneys involved does not mean

23  that we have to waive as to everything every lawyer did.  And

24  in *Patel*, going back for a second, there were other lawyers

25  that were involved during the time period, but the Government

1  did not press for their information because it didn't connect

2  it to legality of conduct.

3        So we think that we have fully complied.  Obviously

4  Mr. Carver has a different position on attorney/client

5  privilege and whether that is waived.  But as far as we are

6  concerned, whatever is in the files of Miss Sztyndor and Mr.

7  Fousek, or whatever they are willing to talk to the Government

8  about, is open, which gives the Government the full opportunity

9  to litigate this matter, Molle and Cohen are out of this

10  equation, as I said before, because legality of conduct was not

11  an issue with them.

12        THE COURT:  Well, do you have any objection to

13  identifying a subject matter sort of like you all did in the

14  *Patel* case?  Is the subject matter the legality of our conduct,

15  or something similar to that?

16        MR. SADOW:  The legality of the conduct as it deals

17  with health care fraud, Medicare rules and regulations, and the

18  anti kickback statute.  But, respectfully, the Government knows

19  this.  Whether we put it in writing or state it on the record

20  otherwise, these are the issues in the case.

21        And the Government fully knows that and that's why we

22  have agreed to waive because to the extent the advice of

23  counsel defense is viable here and we seek an instruction on

24  that, those are the individuals that will be relying on for

25  advice.

1          THE COURT:  So are you saying to the extent, let's say

2    I were to find that the waiver applies to the subject matter

3    and the subject matter is legal advice regarding the legality

4    of the Defendants' conduct with respect to kickback and health

5    care laws that the waiver applies to that is subject matter.

6    Your response would then be that these two additional attorneys

7    were not consulted on that subject matter.

8          MR. SADOW:  That's correct.

9          THE COURT:  All right.  Well, so Government, where

10   would that leave us?  Let's say I agreed with you on the law

11   regarding it applies to the subject matter.  And he has

12   identified the subject matter and he is saying that these

13   attorneys weren't consulted on this subject matter.  So where

14   would that leave us?

15         MR. QUEENAN:  Well, Your Honor, let me add this.

16          That is a broad waiver and I appreciate that.  And

17   with that broad waiver, though, let's look at legality of

18   conduct.  I want to draw the Court's attention to Page 6 of our

19   motion, which would draw into some of the exhibits, which would

20   be the privilege logs.

21          And again, this is just from the privilege logs, Your

22   Honor.  Attorney Cohen and Attorney Molle are exchanging

23   communications with the Defendants with regard to summary of

24   OIG, DOJ 10-7, Office of Inspector General, Department of

25   Justice.

1           If you turn to Page 7 there is communication regarding

2      LA indictment.  The next entry on 10-7, lab owner indictment

3      10-8 OIG, DOJ investigative summary.  10/16 2020 Monroe Lab

4      indictment and, then, 10/19 2020 Texas Grand Jury indicts two.

5           That sounds just like it has to do with legality of

6      conduct related to health care fraud and anti kickback statute.

7      And so those communications would fall underneath that waiver

8      and the documents related to that and, then, the communications

9      that aren't written are now waived as part of that privilege.

10          MR. SADOW:  And we would not agree with that.

11          To the extent that our clients -- again, this is more

12     on the line of a potential compromise, although, I don't think

13     we need to do it.  To the extent that the Government wants

14     communications in which Cohen or Molle pointed out on their own

15     to our clients other prosecutorial conduct or actions that's

16     not a problem for us.

17          Again, the question becomes did we seek the legal

18     advice from them on this or whether they just chose to give it

19     to us.  And I am suggesting that if the Court looked at that

20     *in camera*, you would see that this is nothing more than lawyers

21     pointing out to their clients in relation to the overall

22     activity that obviously DOJ and the Government prosecutors are

23     interested in this line of investigation and prosecution.

24          Like I said, to the extent that the Government wants

25     those from Dougherty, have at it, but that has nothing to do

1  with the legal advice that Dougherty sought or Gosney sought

2  with regard to their conduct.

3          MR. QUEENAN:  And Your Honor, I appreciate --

4          THE COURT:  Before you do that, let me ask you this.

5          If I wanted to look at these documents *in camera*, what

6  is the universe of documents that we are talking about and how

7  would I get those and who would give them to me?  Are we

8  talking about a couple hundred of documents or thousands, or

9  what?

10          MR. SADOW:  Well, for Dougherty it is reduced.  I am

11  not certain, but we are talking about tens of documents and not

12  hundreds of documents.

13          Now as to Gosney I would have to let Gosney's counsel

14  speak to that.

15          MR. QUEENAN:  I think it is about 289 e-mails that Mr.

16  Gosney asserted privilege over; e-mails or documents with

17  regard to Attorney Cohen.

18          But, Your Honor, so I think in the whole universe it

19  is a few hundred documents, Your Honor.  There is probably a

20  handful of ways that we can do it mechanically.  One is Your

21  Honor could authorize the Filter Team to release to you

22  *in camera* these documents for your review.

23          But maybe before you get there, Your Honor, I just

24  heard Attorney Sadow say essentially say that the

25  communications that flowed were not attorney/client privilege

1  because nobody sought advice.  It was just on their own they

2  were issuing these e-mails to Attorney Gosney and Attorney

3  Dougherty.  So they wouldn't even fall under privilege.  And if

4  that's the case, there is no need for an *in camera* review.

5          And you know, we could certainly interview the

6  attorneys as to why they were doing that and review those

7  communications because as Attorney Sadow is saying they are not

8  privileged because that wasn't part of the exchange of legal

9  advice.

10          MR. SADOW:  Well, that's not exactly what I said.  So

11 let's be clear --

12          MR. QUEENAN:  Your Honor --

13          THE COURT:  Hold on.

14          MR. FELDMAN:  May I be heard very briefly?  Daniel

15 Carver's lawyer.

16          THE COURT:  Yes.  We are on Zoom.  So it is kind of

17 difficult with people talking over each other.  But, yeah, let

18 me go ahead and hear from whoever just -- I can't tell who that

19 was.

20          Go ahead.

21          MR. FELDMAN:  It's Andrew Feldman on behalf of Daniel

22 Carver.

23          So I know that these issues are nuanced and technical

24 and I know we are going to get to this.  But Daniel Carver, my

25 client, has not waived privilege with respect to any attorney

1  in this case.

2          So I think we need to be extraordinarily -- and we

3  submitted a 373-page privilege log.  So I think we need to be

4  extraordinarily careful about getting into the content of any

5  communications that were exchanged between clients and lawyers.

6          And a lot of the communications that we are talking

7  about that were exchanged between Mr. Dougherty and Mr. Cohen

8  also included my client.  So I think we need to be extremely

9  careful, again, in this hearing and outside of this hearing

10  until the Court or until a Court issues a ruling on this issue

11  about getting into the content of any communications.

12          That said, I believe, again, I am sort of putting the

13  cart before the horse because there is this other issue going

14  on that the Court has to decide, but we have not waived

15  attorney/client privilege, work product privilege, any

16  applicable privilege under the law with respect to these four

17  different attorneys.

18          So to the extent that we are talking about a subject

19  matter waiver, it does not sort of resolve any of the issues

20  with respect to my client.  This is still applied to my client

21  who has not waived attorney/client privilege.

22          Now, Mr. Queenan said something at the beginning of

23  this hearing and I will just put it on the record again.  We

24  filed a notice with the Court that we are not asserting an

25  advice of counsel defense.  We complied with the Court's order,

1    but we are not, of course, waiving any other type of defense

2    including a good faith defense.

3          But if a Defendant in a criminal defense puts on a

4    good faith defense and asks for a good faith instruction, and

5    as part of that good faith defense, they are going to seek to

6    introduce either affirmatively or through cross-examination

7    privileged communications with their lawyer then, of course,

8    they are waiving privilege.  We are not going to be doing

9    anything like that at trial.

10          So I just want to make that clear.  I thought I made

11   that clear in our notice and in our response, our brief

12   response to the motion to include this defense, but I just

13   wanted to do that again for the Court's edification.

14          Thank you.

15          THE COURT:  Well, Mr. Queenan -- well, let me ask

16   Mr. Queenan a question first.  What is the Government's

17   position?

18          Let's say I were to review these documents *in camera*

19   and find that they related to the subject matter and therefore,

20   there had been a waiver as to one of the Defendants on one of

21   these e-mails, but there is another Defendant who is

22   maintaining privilege on the same e-mail.

23          What is the Government 's position there?

24          MR. QUEENAN:  Your Honor, two ways at least that come

25   off the top of my head in which it would moot the issue.  One

1   is I know it is not in front of Your Honor, but Judge Cannon,

2   maybe she will refer it or maybe she will handle it herself is

3   addressing whether or not these communications may be pierced

4   and released pursuant to the crime fraud exception.

5          A little bit more clear just now is that these are

6   already waived to the extent they were privileged in the first

7   place.  So you are talking about communications in which,

8   again, Mr. Sadow will correct my understanding of what he said,

9   that aren't privileged because they aren't exchanged for

10  purposes of rendering legal advice or preparing for litigation

11  or any of the other reasons that would protect them by

12  attorney/client privilege.

13         And so there is no attorney/client privilege with

14  Mr. Dougherty and Mr. Cohen, for example.  And yet, they are

15  sharing it with Mr. Carver or, vice-versa, Mr. Carver is on an

16  e-mail that maybe he had privilege with Attorney Cohen, but

17  since Mr. Dougherty has indicated he did not have privilege

18  over those records and they were shared with him, well, that is

19  waived.

20         That's like, you know, Black letter law.  You start

21  waiving these when you are sharing them outside the

22  attorney/client privilege.  So Your Honor can find that they

23  are not privileged or they were privileged and they have been

24  waived.

25         Now, in the event that there are documents that remain

1  privileged and Defendant Dougherty and Defendant Gosney cannot,

2  I guess, unilaterally waive because of some common interest

3  privilege and they are needed for their defense, but Mr. Carver

4  does not want them presented at his trial, now we have an

5  issue, but there is a handful of ways that this is resolved

6  without coming to that where they are truly antagonistic.

7       THE COURT:  When you are talking about waiver, I

8  imagine what you are saying is -- let's say an attorney sends

9  an e-mail to three recipients, one of whom that attorney has an

10 attorney/client relationship with and the other two he does

11 not.

12      So you are saying now that that's now a waived

13 communication because they invited it into the communications

14 someone who is not part of the privilege.

15      Is that what you mean?

16      MR. QUEENAN:  That's my understanding, Your Honor,

17 yes.

18      THE COURT:  So for me to sort all of that out, we have

19 to have some sort of, you know, piece by piece hearing where we

20 figure out whose attorney is who, when did the relationship

21 last, on this e-mail who is the attorney and who is the

22 outsider to the relationship?

23      I mean, how would we do that and who would be at that

24 hearing?  Because the Government can't be there, right?

25      MR. QUEENAN:  Well, Your Honor, my understanding is if

1  you were to review some of these communications *in camera*, you

2  are also, whether *in camera* or not, if there are retainer

3  agreements or invoices that were issued tied to the payments

4  that we have outlined in one of our exhibits, those are not

5  privileged.  And so those materials can be considered in

6  determining this as well.

7           I don't think it is that complicated, though, Your

8  Honor.  I don't think it needs to be done e-mail by e-mail.  It

9  may be grouped.  Maybe there truly was some spin-off whenever

10  Attorney Cohen was doing something for them on a business

11  standpoint that had nothing to do with their operation of labs

12  or call centers.

13           And certainly, like we agreed to in the *Patel* case,

14  that is not relevant or probative to the trial issues.  We

15  would ask to see those privileges and it would be subject to

16  the waiver.  But we've asked Defense counsel to go through

17  their privilege logs in light of these assertions and tell us

18  what falls underneath, you know, which category.  And that is

19  something that the Court could direct them to do to accelerate

20  this as well.

21           THE COURT:  All right.  When you mentioned earlier

22  somebody would release these e-mails to me, who was that that

23  you said could do that?  The privilege team?

24           MR. QUEENAN:  Yes.  The Government Filter Team --

25           THE COURT:  Filter Team.

1          MR. QUEENAN:  -- or Special Matters Unit.

2          Attorney Tim Cooley is the assigned attorney from the

3     SMU.  They have these documents in their possession.  And with

4     the Bates numbers that would be affiliated with whatever was at

5     issue, they could make a production to the Court.

6          THE COURT:  So I could ask the Filter Team to produce

7     to me all items on the privilege log for these two attorneys at

8     issue over which the two Defendants claiming advice of counsel

9     defense have asserted privilege over communications between

10    attorney A and attorney B, please release all those e-mails to

11    me.  That could happen.

12         MR. QUEENAN:  Yes.

13         THE COURT:  Okay.  All right.  Mr. Sadow, I

14    interrupted you earlier.

15         MR. SADOW:  No.  Thank you, Your Honor.

16         First, so the Court is aware in response directly to

17    the last thing that the Government said, there is a written

18    joint defense agreement which involves Carver and Dougherty.

19    And that agreement to the extent I am putting it on the record

20    so the Court has it, is dated August the 12th of 2020.

21         So the notion that information shared between Carver

22    and Dougherty after that date is covered by joint defense

23    privilege, which would obviously bring us back to where

24    Carver's counsel indicated that he is not waiving.  So to the

25    extent that the Court needs to see that *in camera*, certainly we

 1  can make that available.

 2        Second --

 3        MR. QUEENAN:  Your Honor?

 4        MR. SADOW:  The notion that if you have a relationship

 5  with an attorney, be it this case or any other case, and that

 6  attorney's relationship may have to do with not the subject

 7  matter, but let's say the creation business documents, inner

 8  discussion of how things are set up.

 9        If that attorney also at the same time provides

10  e-mails or documents pursuant to that arrangement indicating

11  what other prosecutors are doing, DOJ is doing in other cases,

12  that does not become unprivileged because it wasn't asked for.

13  Attorneys and clients interact all the time.  Not necessarily

14  upon an express statement of what they are asking for.

15        So what I was attempting to do was to tell the Court

16  to the extent that Molle or Cohen sent these documents out.

17  Again, recognizing that Carver is not going to waive, but sent

18  those out to Dougherty about what was going on in other cases,

19  I, on behalf of Dougherty, don't have objections to those being

20  released.

21        But that is not because there isn't a privilege.  It

22  is because I am trying to work through this to make the Court's

23  job a little easier and to work through some kind of a

24  compromise with the Government, but I don't back away from the

25  idea that they are all privileged and it does not change

1    Carver's privilege on this.

2              And that has something else to do entirely with what

3    Gosney is doing because, as I said, the joint defense did not

4    necessarily include Gosney.  And I don't know, I haven't seen

5    what e-mails or other documents Gosney has claimed to be

6    privileged.  I am not privy to that.

7              I am only privy to what I claimed and that is

8    relatively few.  I know Carver's was much greater.  Talking

9    about Daniel Carver.  Gosney's was greater than ours, but I

10   don't have access to those.  So I am not going to be waiving

11   anything with regard to those because I don't know what they

12   are.

13             THE COURT:  All right.  I understand.

14             Government, anything else on that issue?

15             MR. QUEENAN:  Your Honor, just briefly.

16             When Attorney Sadow now says, look, those documents of

17   Mr. Molle we have a joint defense, they actually are

18   privileged, well, that now starts to fit right underneath that

19   broad waiver.  Talking specifically for Mr. Dougherty now.  I

20   understand Mr. Carver's assertion.

21             So one way or the other, they are either going to fall

22   under that waiver, that broad waiver, or they are not going to

23   be privileged.

24             MR. SADOW:  Your Honor, respectfully I am not sure I

25   understand that.  They are privileged amongst Carver and

 1   Dougherty.  Dougherty can waive as to what he chooses to waive,

 2   but that does not change Carver's unwillingness to waive.

 3        And unless Carver waives, I can't and that is what the

 4   agreement says.  So I am not quite sure I understand how that

 5   fits into the subject matter waiver other than the compromise

 6   that I had suggested as to documents that had been delineated

 7   as basically Cohen -- I think it is Cohen or Molle.

 8        I believe it is almost always Cohen sending out

 9   something that says DOJ is prosecuting this or DOJ is

10   prosecuting that.  We are not going to be taking a position

11   that we were unaware of DOJ prosecutions.

12        The question becomes whether our conduct was legal and

13   not whether anybody else's conduct in other cases was legal.

14        THE COURT:  All right.  Is there anyone else who wants

15   to speak to this issue?  Counsel for anyone else?  And the

16   issue, again, is this subject matter issue.

17        MS.  SILVAGGI:  Your Honor, if I could just briefly?

18        So Mr. Queenan stated that there are approximately 289

19   items on Gosney's privilege log that are e-mail communications

20   that are Attorney Cohen.

21        So in this case, the Filter Team produced in August of

22   last year potentially privileged materials to Gosney that were

23   not actually Gosney's privileged communications.  They were

24   communications between Attorney Cohen and, for example, Mr.

25   Danny Carver and Mr. Dougherty.

1          Gosney was made a privilege log based on that material

2    and he included communications with Aaron Cohen and Mr.

3    Dougherty and Mr. Carver on the basis of what Mr. Sadow just

4    described that there was a common legal interest amongst those

5    three parties.

6          The Filter Team, then, asked Mr. Gosney to sequester

7    that material and no longer access it because it was not Mr.

8    Gosney's privilege, according to the Filter Team.

9          And then, the Filter Team advised Gosney's counsel

10   that the Filter Team was going to move for authorization to

11   release those documents as non privileged and that was in

12   October of 2022 and it has never been resolved.

13         But to clarify, there are not 289 e-mails between

14   Mr. Gosney and Mr. Cohen.

15         THE COURT:  So where does that issue stand right now?

16         MS. SILVAGGI:  I think the issue becomes complicated

17   now that Mr. Carver has not waived privilege because Mr. Gosney

18   is asserting that there is a common interest privilege with

19   those communications, but they are direct communications

20   between Mr. Gosney and Mr. Cohen.

21         And there has never been a ruling as to whether the

22   documents are privileged and whether or not Mr. Gosney has a

23   common legal interest privilege because they were never brought

24   before the Court.

25         THE COURT:  And are these part of the 289

1  communications or is this something in addition to that?

2         MS. SILVAGGI:  No, I believe those are the 289 e-mails

3  Mr. Queenan is referring to.

4         THE COURT:  Okay.  All right.  Walk me through it

5  again.  I didn't understand it.  So there are 289 e-mails.

6  Walk me through it step-by-step, please.

7         MS. SILVAGGI:  So with the production when we received

8  the materials?

9         THE COURT:  Yes.  What is the dispute right now over

10  these e-mails?

11         MS. SILVAGGI:  So Mr. Gosney was told to sequester a

12  group of materials that the Filter Team advised were third

13  party privileged holder materials.

14         THE COURT:  Got it.

15         MS. SILVAGGI:  Prior to that clawback order or request

16  to sequester from the Filter Team, Mr. Gosney included

17  materials from that production on his privilege log.

18         THE COURT:  Okay.

19         MS. SILVAGGI:  If there are items on Mr. Gosney's

20  first privilege log that he gave to the Filter Team that Mr.

21  Gosney can no longer access.

22         THE COURT:  All right.  And Government, your position

23  on that?

24         MR. QUEENAN:  Your Honor, one thing that is a little

25  curious to us is if Gosney had these for a matter of months,

1   reviewed the material, asserted a genuine privilege over them,

2   and then when they were clawed back did nothing to advocate to

3   have his materials that he had privilege over released back to

4   him has done nothing.

5        And in fact, since asserting this advice of counsel

6   defense and claiming that they were going to rely on documents

7   that purportedly are privileged, they asserted privilege over,

8   and now not further advocating or seeking their release is

9   curious.

10        If you wanted these documents, if they are truly

11  privileged why didn't -- over the matter of months that we have

12  we have waited since they were clawed back have you not asked

13  for them back.  And more specifically, recently since you are

14  preparing your defense you have now asserted, why haven't they

15  asked Filter for those documents back?

16        The ball has been in Mr. Gosney's court and he has

17  done nothing and it is resulting in the delay that we have here

18  on the eve of trial.

19        THE COURT:  Okay.

20        MS. SILVAGGI:  Your Honor, that is not correct that

21  have not done nothing.  We have spoken to the Filter Team

22  numerous times and we were told repeatedly from the Filter Team

23  that we had to discuss the matter with the privilege holders.

24        Now, Mr. Carver as he is still not waiving privilege

25  was never agreeing to release Mr. Carver's privileged materials

1   to Mr. Gosney.  So it is the same -- it is not that we have not

2   done nothing.  There was nothing for us to do.  We cannot

3   compel Mr. Carver to waive his privilege.

4         THE COURT:  But is the problem here that if I order

5   that these be produced to me *in camera* and then I decide they

6   fall within the subject matter, your point is, yes, but they

7   are still subject to my client's privilege?

8         Is that your point?

9         MS. SILVAGGI:  It is multiple client privilege,

10  correct.

11        THE COURT:  Okay.

12        MR. SADOW:  Your Honor, if I might.  Steve Sadow

13  again.

14        THE COURT:  Yes.

15        MR. SADOW:  You would still be in a situation in which

16  if Daniel Carver is one of the privileged holders, it wouldn't

17  change the fact that in a joint trial with Mr. Carver, Mr.

18  Carver would continue to assert his privilege, which means we

19  wouldn't be able to use even that information from Miss

20  Sztyndor or Mr. Fousek.

21        THE COURT:  Well, that is a fundamental problem.

22        Government, how would that work?  If one Defendant

23  wants to rely upon advice that another Defendant thinks they

24  have a privilege over, how can that work mechanically at a

25  trial?

1           MR. QUEENAN:  It likely cannot, Your Honor.

2           That is what I was alluding to earlier.  However,

3    there are a few different variances we can go down in which it

4    moots this conduct, these antagonistic defenses and one that I

5    mentioned was crime fraud exception.

6           THE COURT:  Right.

7           MR. QUEENAN:  Two is a lot of these materials were

8    already waived.  Three, there is no valid common interest

9    agreement.  And the burden is on these Defendants to

10   demonstrate that and not the Government.  It is on the

11   Defendants.

12          Now, you are going to hear a lot of allegations in

13   this case, Your Honor.  The case is rooted on creating a lot of

14   these shell companies, front companies.  Companies which have a

15   nominee owner asserted in and they are going to claim some

16   common interest over an entity that they have concealed their

17   ownership interest over.  That's not going to be a legitimate

18   common interest there.

19          And so, those are different ways that Your Honor, you

20   know, can resolve these where it wouldn't result in severance.

21   I think there is probably another way.  Although it is less

22   likely in determining whether or not, you know, any of this is

23   actually material and prejudicial to their defense and that may

24   be very fact driven.

25          Of course, I don't want to speculate because I don't

1    know the substance of all the privileged communications, but I

2    think there are more likely, there are those, at least those

3    three scenarios that would moot this issue.

4          But if it is not mooted and it comes to a head, Your

5    Honor, indeed they are antagonistic and, you know, we have to

6    take this up in terms of whether or not severance is

7    appropriate, but we do believe that there are plenty of viable

8    scenarios where we don't have to get there.

9          THE COURT:  All right.  Anything else on this issue

10   before we go to the next one?

11         MS. SILVAGGI:  Yes, Judge.

12         I just want to quickly correct.  I think I misspoke

13   earlier when I was referencing e-mails with Attorney Cohen.  I

14   misspoke and said there were e-mails with Mr. Gosney, but

15   that's not correct.  I meant Mr. Cohen e-mailed directly with

16   Mr. Carver and Mr. Dougherty.  So I just wanted to correct the

17   record.

18         THE COURT:  All right.  I appreciate that.

19         Anything else from anyone on this issue?

20         Okay.  Government, what do you think is the next

21   issue, the good faith?

22         MR. FELDMAN:  I'm sorry, Your Honor.  Just very

23   briefly on this issue.

24         THE COURT:  Sure.  Can you identify yourself?

25         MR. FELDMAN:  Yes, Your Honor.  Andrew Feldman on

1  behalf of Daniel Carver.

2        THE COURT:  Got you.

3        MR. FELDMAN:  So I agree with the last thing that Mr.

4  Queenan said that, you know, if there are antagonistic defenses

5  I think the only thing to do here is to severance this case.

6        I know my client is not going to change his position.

7  There is no universe from which he is going to change his

8  position in violation of the Court's order to elect the defense

9  by a certain period of time.

10        But I do want to bring back just very briefly this

11  issue with respect to the Special Matters Unit or what has been

12  called the Filter Team.  They have somehow inadvertently sent

13  280 e-mails and communications between lawyers that represent

14  my client, lawyers that represent Mr. Dougherty to counsel for

15  Mr. Gosney.

16        The Government has sort of a different spin on that as

17  to Mr. Gosney's counsel hasn't done anything about that, but

18  you know, it doesn't seem like the Government has done anything

19  to correct that other than to ask Mr. Gosney to basically

20  destroy and sequester those records.

21        So I don't really know the status of that issue other

22  than that is an issue.  And of course , it is being framed in

23  terms of whether or not there's a subject matter waiver and who

24  the privileged holders are and what they have waived with

25  respect to which attorney.

1        But I think that, you know, the issues that we are

2   dealing with here today are limited to what is on the Court's

3   calendar.  And we are not dealing with whether there is a valid

4   common interest agreement or whether the crime fraud exception

5   somehow destroys attorney/client privilege.

6        But if Your Honor is inclined that certain e-mail

7   communications released by the Filter Team or the Special

8   Matters Unit to Your Honor for Your Honor's *in camera* review,

9   obviously there needs to be a protocol and a process for us,

10  for each privileged holder, especially the privilege holder who

11  is not waiving privilege to object and to intervene and be a

12  part of that process.  That is all I would say on that issue.

13       THE COURT:  Okay.  Government, do you have a position

14  on that?  If I ordered these e-mails to be turned over to me,

15  what is your view on whether the other Defendants have rights

16  there about what I can or shouldn't do with them next?

17       Do you have an opinion on that?

18       MR. QUEENAN:  Well, Your Honor, I guess playing it

19  out.  So if you were going to ask an order for an *in camera*

20  review of, for example, the communications with Attorney Cohen

21  and attorney Molle involving all three of these Defendants, I

22  am not sure --

23       THE COURT:  Which three?

24       MR. QUEENAN:  Excuse me.  The only three remaining

25  that have asserted privilege which are Defendants Daniel

1  Carver, Thomas Dougherty, and John Paul Gosney.

2          I think footnoted in the Government's motion is the

3  fact that -- and we have touched on it earlier -- Louis Carver

4  has not asserted an advice of counsel defense.  And indeed, has

5  not submitted a privilege log and has indicated that he does

6  not have an attorney/client relationship with any of these

7  attorneys.  And I think Josh said that even if it was construed

8  that he did -- I'm sorry.  Attorney Lowther indicated assuming

9  that he did, it would be waived.

10         I believe Mr. Goyos has indicated almost the same

11 position in that he did not have an attorney/client

12 relationship with these attorneys.  In the event that it was

13 construed that he did, he would waive as well.  So the issue

14 really comes down to the three privileged holders or potential

15 privileged holders.

16         THE COURT:  Is there a complete overlap?

17         In other words, since D. Carver has not asserted

18 advice of counsel, what I would be interested in are the

19 privileged e-mails on Dougherty and Gosney's log with Cohen and

20 Molle.

21         Now, is that necessarily going to include everything

22 that would also be on D. Carver's log with those attorneys?  In

23 other words, why do I need to see anything to do with Daniel

24 Carver?

25         MR. SADOW:  Your Honor, if I may speak to that

1  briefly.  This is Steve Sadow again.

2          I could represent to the Court for purposes of the

3  record that communications with Carver and Dougherty and Cohen

4  and Molle, for the most part, involve both of them.  That is

5  Danny Carver and Dougherty.

6          So if you are seeking to obtain something that is

7  Dougherty only, there may be a couple, but it is very, very few

8  that don't also impact and deal directly with Mr. Carver.

9          So you would be getting those even though Mr. Carver

10 isn't waiving the privilege.

11         THE COURT:  Got it.  So there would be a substantial

12 overlap.  So I would end up looking at a stack of documents.

13 The vast majority of which would also be on Dan Carver, Daniel

14 Carver's privilege log, right?

15         MR. SADOW:  I would assume so based on what I know

16 from my side of it.

17         THE COURT:  Okay.  And --

18         MR. SADOW:  And Mr. Carver's lawyer, I think, could

19 confirm that.

20         THE COURT:  Got it.

21         MR. FELDMAN:  I believe that Mr. Sadow's recitation of

22 the overlap is generally accurate.

23         I would need to obviously confirm.  And if the Court

24 orders us to, you know, supply some type of combined log or

25 something of that nature, to accelerate this process, we

1 obviously have no problem with that. We submitted a very

2 extensive privilege log or my predecessor counsel Brian

3 Rafferty's law firm did in November of 2022 to the Special

4 Matters Unit.

5 THE COURT: Okay. So I guess where I am going,

6 though, is if one day I look at all these e-mails and I decide

7 they fall within the subject matter and because Dougherty and

8 Gosney have or are asserting advice of counsel, they are part

9 of the waiver, they need to be turned over.

10 But, then, Daniel Carver is going to raise his hand

11 and say, no, no, no, those were my privileged communications,

12 too, then we are going to be back in that boat where we need

13 rulings on crime fraud, or waiver, or we need a severance.

14 Is that correct, Mr. Queenan?

15 MR. QUEENAN: I think's right, Your Honor.

16 I mean, I think the preferred sequence, at least from

17 judicial economy the way that the Government sees it is that

18 you would analyze crime fraud. And then, if necessary, analyze

19 whether there is common interest privilege, or whether any of

20 these other privileged documents have otherwise been waived.

21 And then, ultimately, if not, if there is some sort of

22 group of documents here that are truly privileged and there are

23 no exceptions in which two Defendants would need to have

24 released to be relied on and one Defendant asserts privilege

25 over, then it comes to a head here in terms of whether we need

1  to sever or analyze or let's say that group of documents is

2  five documents on two issues, well, is that really probative

3  and relevant and material to what the issues are going to be at

4  trial?  And I think that the Court would have to decide that

5  and whether it warranted severance.

6         THE COURT:  And then, a sub issue -- I don't care who

7  answers this, but let's say the Court gets to a point where it

8  decides some of these privileged e-mails would need to be

9  turned over pursuant to a waiver, do Dougherty and Gosney first

10 have an option to withdraw the advice of counsel defense?

11        Should they be given that opportunity first or do you

12 think that you guys would never do that?  You would say, you

13 know what?  I would rather live with the disclosure of these

14 e-mails because the advice of counsel defense is important to

15 me.

16        MR. QUEENAN:  Meaning, Your Honor, in the event that

17 Your Honor decided based on the broad waiver that applies,

18 every e-mail is -- just for hypothetical purposes -- every

19 e-mail that you have exchanged in your communications with

20 attorneys Cohen and Molle is fair game for the Government

21 before I rule this basically give them the option of

22 withdrawing their advice of counsel defense.

23        THE COURT:  Right.  Should they be given that option,

24 what is your position?

25        MR. QUEENAN:  Yes.  I think they should be given that

1    option, but I think it probably needs to come to a head sooner

2    rather than later.

3          THE COURT:  I understand that.

4          What about Dougherty and Gosney?  Counsel for those

5    Defendants, what is your view on that?

6          MR. SADOW:  Your Honor, again, Steve Sadow for Mr.

7    Dougherty.

8          One of the problems that we are having now is the

9    Government has filed the motion to basically pierce the

10   attorney/client privilege for the crime fraud exception.

11         The Defendants Gosney, Carver, and Dougherty's

12   response is due today.  So that matter, respectfully, is not

13   yet on the Court's plate to consider.  We are going to oppose

14   it.  I don't think you can deal with the crime fraud exception

15   until respectfully, again, Judge Cannon says that is what she

16   would like the Court to do.

17         So I think you should play that one out for a minute.

18   Addressing what the Court just said, if the Court deems it

19   appropriate that certain communications that we claim to be

20   attorney/client privilege should be produced or disclosed

21   because of the subject matter, I think that Dougherty would

22   then want the opportunity to say, yes, I am going to rely on

23   the privilege or, no, I am not.

24         Because our position would be if we are not going to

25   rely on the privilege, then, those documents should not be

1  disclosed.  Again, crime fraud exception separate from those.

2       THE COURT:  You would want the chance to revisit the

3  decision of the defense?

4       MR. SADOW:  I would, but this brings up a different,

5  but related problem that the Government has made mention at

6  least with regard to Carver.

7       And maybe Mr. Feldman may address this, but the

8  Government's position is essentially if you do not waive

9  privilege, you cannot admit or even mention at trial that an

10 attorney told you something insofar as it may relate to a

11 general good faith defense as opposed to advice of counsel good

12 faith defense.

13      The Government's position apparently is you can't use

14 it for any -- and we strongly disagree with that and I know

15 that Daniel Carver's attorney, Mr. Feldman, has already

16 addressed that.

17      So maybe I will turn that part over to him because the

18 fact that you don't rely on the advice of counsel defense does

19 not mean that other matters that relate to what an attorney may

20 have said to a given Defendant or aren't admissible for the

21 good faith defense.

22      And I think Gosney's counsel was kind enough to share

23 with us just before this hearing a case called *United States v.*

24 *Romaro,* which is unpublished.  I will give the Court the cite

25 to that case so that the Court can understand what we are

1  talking about here.  It would be 542 F. Appendix 879.  It's an

2  Eleventh Circuit decision in 2013.  Again, it is unpublished,

3  but it speaks to however briefly the question of the difference

4  between reliance on advice of counsel for good faith versus

5  just good faith in general.

6          And there is another case out of the Second Circuit

7  that has been cited that deals with what a Defendant, should he

8  choose to testify, could talk about on direct examination

9  vis-à-vis communications that he has had, not just with his

10  lawyers, but with anyone that impacts on the question of good

11  faith.

12          So we don't want that.  We don't want the Government

13  to be able to say, well, you have now decided you don't want to

14  raise the attorney/client reliance on advice of counsel defense

15  and, therefore, you are precluded from introducing any evidence

16  at all that deals with good faith in general.

17          So I just want to make that clear because that appears

18  to be the Government's subsidiary argument with regard to Mr.

19  Carver.

20          Mr. Feldman, did I get that correct?

21          MR. FELDMAN:  Sort of.

22          Your Honor, Andrew Feldman on behalf Daniel Carver.

23          If we could just turn back to sort of the main issue

24  very quickly about what Your Honor is potentially tasked with

25  doing next and it sounds like maybe there is a disagreement on

1    the Government and the parties with respect to the order in

2    which Your Honor should evaluate certain aspects of this.

3            My client, Mr. Carver, is not waiving attorney/client

4    privilege with respect to any lawyer.  So it sounds like what

5    Your Honor may be doing first is determining subject matter

6    waiver.

7            Whether or not the subject matter waiver needs to be

8    broader than what it is now and broader than, quite frankly,

9    what Judge Cannon ordered everyone to do, which would mean that

10   Your Honor would look at a series of e-mails or communications

11   involving Attorney Cohen and Attorney Molle to determine

12   whether or not there needs to be a subject matter waiver that

13   applies to communications with them.

14           To the extent that Your Honor were to decide that

15   there is a subject matter waiver that needs to apply to them

16   because of how the subject matter is potentially parsed out or

17   phrased, Your Honor still has to decide whether or not those

18   communications are privileged, right?

19           And so we would maintain that they are still all

20   privileged regardless of whether or not -- and we are not

21   waiving that privilege.  So Your Honor would still have to

22   decide whether or not to make the waiver determination in terms

23   of the breadth of the waiver and make the privileged

24   communication.

25           But then, we are sort of back to where we are right

1 now, which is at least with respect to my client that my client

2 still maintains the sanctity and secrecy of the attorney/client

3 privilege which he is not waiving.

4            So I think we have to do that first for that reason,

5 but also because, as Your Honor just noted, it may be that

6 Gosney and Dougherty, depending on what the ruling is with

7 respect to subject matter waiver and the breadth of that that

8 there is some type of reconsideration of the advice of counsel

9 defense.

10           I don't want to put words in their mouths.  Those are

11 decisions that they will have to individually evaluate, but I

12 don't think Your Honor can, you know, move forward with any

13 determination until it has made those determinations.

14           And even if, like I say, even if there is a subject

15 matter waiver determination, for example, that Your Honor finds

16 that, you know, Molle and Cohen's communications need to be

17 disclosed or need to be part of the subject matter waiver,

18 unless there is also a determination that they are not

19 privileged and, of course, we wouldn't want to be a part of

20 that conversation with the Court on an *ex parte* or *in camera*

21 basis.

22           Unless there is that determination it is not going to

23 change the fact that Mr. Carver is not waiving privilege with

24 respect to those lawyers and with respect to any communications

25 and work product with respect to any lawyers.

1            So, you know, that is the first step.  And then, the

2    second step would be, okay, let's take a look at whether or not

3    any of this stuff is covered by the crime fraud exception.

4            Of course, the problem with that as I see it -- and I

5    know I am putting the cart before the horse, but the problem

6    with that, as I see it is, that we have this 373-page privilege

7    log and you would have to go through each of those

8    communications one-by-one.  You can't just do it in a wholesale

9    fashion.  You have to go one-by-one to determine whether or not

10   the crime fraud exception applies to any of them.

11           So I don't think this is as simple as the Government

12   may believe it is.  I think it is quite nuanced and quite

13   complex at this point.  So that's all Mr. Carver has to say at

14   this point.

15           MR. SADOW:  Your Honor, if I might.  Steve Sadow one

16   more time, please.

17           THE COURT:  All right.

18           MR. SADOW:  I might suggest to the Court that the

19   easiest way to do this when you are doing the *ex parte in*

20   *camera* review is to have the Filter Team -- if that's the route

21   the Court chooses -- to have the Filter Team send to the Court

22   all of the communications that do not involve Carver.

23           That is send everything along that Carver is not

24   privileged on.  So that the Court can see the universe of what

25   is out there without Carver.  Because the Carver issue, while

1  it obviously needs to be addressed, is kind of separate at this

2  point because until such time as a Court rules that Carver

3  either does not have a privilege because it is crime fraud or

4  there has been some form of waiver by Carver, the Court's

5  review of the *in camera* really is not going to make a

6  dispositive way of ending this.

7          I think the Court is better off trying to understand

8  the limited nature of the non Carver communications to begin

9  with, with Molle and Cohen.

10          THE COURT:  All right.  Is the Government's last word

11  on any of that?  Do you have anything to say?

12          MR. QUEENAN:  Your Honor, just briefly on the last

13  piece and I don't know if it is as simple as the Filter -- I

14  don't want to speak to the Filter Team, but the burden is on

15  these Defendants to demonstrate that there is legitimate

16  privilege.

17          I don't what Filter is going to be tasked with trying

18  to sort out what is asserted to be privileged by Defendants

19  Dougherty and Gosney, but not Carver.  That's on these

20  Defendants and we have asked them to do that dating back to

21  June 5th with no response.

22          In fact, there is an e-mail from, I believe, Tim

23  Cooley of the Special Matters Unit either on the 5th or the 7th

24  asking for updated privilege logs, at least to Attorney

25  Gosney's counsel, and I don't know that they have responded

1  since.

2          So that is kind of like pushing off their obligation,

3  their burden on to the Filter Team.  We are going to do as much

4  as we can to help the Court get this done.

5          So if Your Honor obviously orders the Filter Team to

6  do some sort of analysis and try to find that sweet spot of

7  these records that are Carver only, I just don't think that's

8  the most efficient way for the Court to handle this.

9          And you have heard how the Government has proposed

10  that may be more efficient because if crime fraud is

11  determined, this moots a lot of these issues.  It truly does.

12          I do have a response on where we started in this line

13  which was like this derivative or hybrid good faith/advice of

14  counsel, but I will hold, Your Honor, until you want to go back

15  to that.

16          THE COURT:  I am ready to go to that argument.

17          MR. QUEENAN:  So I don't have the benefit of having

18  read the *Romaro* case which was just cited and I don't think it

19  is in the papers.  So unpublished and, I guess, not at this

20  point binding Eleventh Circuit precedent, I don't know what it

21  holds, or what it says, and how it relates to this case .

22          But what I do know is once you assert an advice of

23  counsel defense you have to waive.  That's part of the deal

24  here and that is what the law says.  Now, what the Defendants

25  are proposing and I know we already have a waiver for

1    Defendants Gosney and Dougherty at the moment, but what we were

2    fearful of Defendant Carver potentially doing, although I think

3    he has clarified it, but now Attorney Sadow has indicated could

4    be an option for his client, it goes across the line here where

5    it is an advice of counsel defense.

6           So, for example, Your Honor, you cannot have the

7    benefit of getting in front of the jury that, hey, I consulted

8    with lawyers.  They advised me.  I relied on them in good

9    faith.  I thought what I was doing was okay.  Oh, but by the

10   way, you can't look at them, though, because they are

11   inculpatory or I don't really want you to see them because they

12   are privileged.

13          So you get the benefit of the jury hearing the

14   inference that you relied on lawyers and that, oh, lawyers were

15   involved.  Well, that must be legitimate without getting to see

16   or hear from the lawyers or see the documents.

17          And that is crossing the line of into advice of

18   counsel.  You can't couch that as good faith, right?  We talked

19   about how you try to smuggle that in that way.  That is exactly

20   what Mr. Dougherty and Mr. Gosney are kind of holding out here

21   for in the event that Your Honor does rule.

22          Look, all this is part of the subject matter.  If you

23   want advice of counsel, the whole thing is coming in.  No, no,

24   no, Judge, we'll just do good faith.  Well, they just can't

25   show up then at trial and sort of elicit on cross-examination

1    or calling their own witnesses and getting into the fact that

2    there are all these meetings and lawyers were consulted and

3    advised and then not have to turn over the privileged

4    communications.  You just cannot do it.

5         THE COURT:  So what would a good faith defense be

6    absent lawyers?

7         Basically, hey, my boss told me this was okay or I did

8    some Internet research and the Internet said it was okay.  As

9    long as the Defendants do not insert into the trial the fact

10   that they regularly consulted lawyers or consulted lawyers

11   because that would convert it into an advice of counsel.

12        Is that your position?

13        MR. QUEENAN:  Indeed.  And what I presume, though,

14   Your Honor for example because there was a consulting group

15   that they employed.  Now they paid them modestly, but we have

16   all their communications and there was no privilege protecting

17   their consulting communications.

18        But they can say, look, we hired Laboratory Medical

19   and I imagine we are going to hear some variation of this,

20   right?  They were the experts.  My guys are businesspeople.

21   They relied on what they told them.  Fair game for good faith,

22   absolutely.

23        And for Mr. Goyos, so you can understand this, I think

24   Mr. Adler and I are on the same page in terms of what his

25   defense is going to be and why it actually is a legitimate good

1   faith defense, he didn't have privileged communications with a

2   lawyer.

3          Now, I don't know factually if this is true, but let's

4   just say Mr. Goyos testifies or Mr. Goyos elicits on

5   cross-examination the fact that Danny Carver told him I ran it

6   by a lawyer and it's legitimate.  That is good faith for Mr.

7   Goyos because he never had privileged communications.

8          You know, there is something there where that

9   situation could involve the lawyers for him, but not for Mr.

10  Carver who had that relationship.  He can't, then, have it both

11  ways.

12         THE COURT:  Okay.  I mean, this sounds like these are

13  -- I guess you filed a motion that precludes because that's

14  essentially a motion in limine, right?  Because like you are

15  asking me to make a trial ruling right now for Judge Cannon,

16  right?

17         MR. QUEENAN:  Yes, except this is a little unique in

18  that the Court has ordered and compelled the Defendants to

19  either assert this defense or not assert this defense by a

20  deadline for trial efficiencies.

21         And I don't know if Your Honor is privy to litigation

22  of the underlying advice of counsel motion that resulted in

23  that deadline, that's where that is.  So it's a little

24  different.  It is almost like there are going to be foreclosed

25  to raising this issue.  So it is more than just a Motion in

1  Limine.

2          THE COURT:  Okay.  All right.  I guess this applies to

3  Daniel Carver.  So who wants to speak to it for him?

4          MR. FELDMAN:  Andrew Feldman on behalf of Daniel

5  Carver.

6          With respect to what Your Honor just -- because that

7  was --

8          THE COURT:  Anything further?

9          I mean, I guess you addressed this previously already.

10  So do you have anything to add as to the Government's motion

11  with respect to your ability to rely upon a good faith defense?

12          MR. FELDMAN:  Well, my position is this.

13          And I think Mr. Queenan actually probably pretty

14  accurately summarized the law as I understand it as well.  We

15  can ask for whatever jury instruction we want at the end of the

16  trial, right?

17          However, if you are going to ask for a reliance of

18  advice of counsel jury instruction, that specific jury

19  instruction, you have got to -- according to Judge Cannon's

20  deadline, you have got to elect that defense.  And of course,

21  we would have had to waive our privileged communications with

22  any lawyer that we seek to introduce those communications

23  through.

24          A good faith defense is a little different in the

25  sense that a good faith defense could be anything.  It could be

63

1  some of the things that Mr. Queenan alluded to, but if, well,

2  we can't have it -- Mr. Carver can't have it both ways.  He

3  can't come into trial and at the end of the trial during the

4  charge conference ask for a good faith defense.

5          And you know, put into evidence of things that other

6  attorneys told him without waiving the attorney/client

7  privilege.  Now, if you waive the attorney/client privilege,

8  you can ask for either one of those defenses.

9          At a trial I had a couple of years ago we did not ask

10 for the reliance of advice of counsel defense.  We waived

11 privilege.  We asked for a good faith defense.  We got a pretty

12 good faith instruction.

13         So I think it just depends on what happens at trial,

14 but I am in sort of a general agreement with what the

15 Government has said about just sort of how this operates on

16 this particular issue.  And all the other issues that we

17 discussed today I am obviously in disagreement.

18         MR. SADOW:  If I might again Steve Sadow for Mr.

19 Dougherty.

20         As far as I want to agree with Mr. Carver's counsel, I

21 don't on this issue.  I can take you back to *U.S. v. Patel*

22 which kind of started this off.

23         In that case, we introduced through co-Defendant

24 cooperating witnesses as well as unindicted co-conspirators

25 that there had been legal advice provided to Mr. *Patel*, the

1   Defendant and that had been related to them.  And when it came

2   down to seeking a jury instruction, Judge Ruiz said you want

3   advice of counsel?  You want good faith?  What do you want?

4   And we said we don't want advice of counsel.  Take that off the

5   table.  We want good faith.  And the Government agreed

6   wholeheartedly that that was appropriate because one is not

7   connected to the other.

8          And given the example that Mr. Queenan brought forth

9   that would suggest the example being if Carver told Goyos

10  something, Goyos can rely on what Carver told him, but Carver

11  cannot rely on the same thing, with all due respect, that does

12  not make sense and that is not what the law is.

13         The law is clear.  You have to have certain elements

14  for reliance upon advice of counsel defense.  If you don't meet

15  those elements, which is a certain type of full disclosure and

16  reliance on the advice you are given, you don't get that

17  instruction.

18         But that is totally separate from a good faith

19  defense, which basically goes to the state of mind of the

20  Defendant and what he believed was or was not permissible.

21         And in this situation, for example -- and it comes up

22  more often than not is when the Defendant testifies.  The

23  Defendant says, you know, I spoke with so and so and he told me

24  X.  I spoke with this person and he told me Y.  I spoke to

25  legal counsel and I said to legal counsel, hey, do you see

1 anything wrong with this?  No.

2          All of that is admissible on the good faith defense.

3 That has nothing to do with reliance of advice of counsel.  So

4 withdrawing one, with all due respect, does not impact the

5 other.  That is going to be Dougherty's position should we

6 decide at any point to give up the advice of counsel, reliance

7 on the advice of counsel defense, which goes back to the way

8 the Court formulated how this should be done.

9          So I don't want to be on record in agreeing with Mr.

10 Carver's defense attorney on that because I don't think legally

11 we can be stopped.  Obviously the Judge can rule against us,

12 but I don't think, with all due respect, I don't think that's

13 Your Honor's call at this point.

14          That would have to do with evidence that would be

15 admissible at trial under whatever the appropriate

16 circumstances are and I don't think we need to address that

17 yet.  I just don't want to be on record as being in agreement

18 respectfully with Mr. Carver's defense.

19          THE COURT:  Well, it strikes me that the ruling I am

20 being asked to make right now would in any event be sort of a

21 preliminary ruling subject to what Judge Cannon sees at the

22 trial when it comes about.

23          MR. SADOW:  Again, Your Honor, Steve Sadow for the

24 record.

25          I would agree with the Court and it may be that after

1  we file our response today on the crime fraud exception, the

2  Court chooses to send that one off for you to take a look at as

3  well.  So we may know that right away.  We may not, but that

4  response is due today.

5          THE COURT:  So all the way back to you, Mr. Lowther,

6  where we started today was trying to figure out your status.

7          And it occurs to me that so much of it really depends

8  upon whether Sztyndor is going to be a trial witness and that

9  in turn depends upon whether advice of counsel is going to be a

10 defense that is presented.

11         So that sort of makes all of these issues.  All these

12 issues have to be decided before I get to you.  Do you agree or

13 disagree with that?

14         MR. LOWTHER:  I disagree.  I understand the Court's

15 comment.  But, obviously, since the Court addressed me earlier

16 and I am listening to the argument which is, you know, not

17 unexpected, of course.  I am not seeing a situation where Miss

18 Sztyndor wouldn't testify at trial.

19         And I understand, you know, certainly the Government's

20 offer that, you know, this may be a more efficient way to just

21 moot these issues and clean it up, for lack of a better phrase

22 but, you know, if the crime fraud exception applies, she

23 testifies.  If the crime fraud exception does not apply, same

24 scenario.

25         It is obvious that Mr. Gosney and Mr. Dougherty are

1  not going to waive privilege and it is equally apparent that

2  Mr. Carver is not going to waive privilege.  So a severance

3  that Mr. Queenan mentioned earlier, well, no, it wouldn't be a

4  severance of Gino Carver.  It would be Daniel Carver, Gino

5  Carver, and Jose Goyos going trial versus -- again, I am not

6  the Court.  I am not trying to assume what the Court is

7  ultimately going to do.

8          But based on Mr. Sadow's comments, again, I don't see

9  where even if the Court decides that Mr. Gosney and Mr.

10  Dougherty have to waive the attorney/client privilege to be

11  able to -- excuse me -- the privilege to be able to assert the

12  defense, I don't see how they are not going to call Miss

13  Sztyndor in support of a good faith defense.

14          So that was a very long answer to a very direct

15  question, but I think based on everything we are hearing and

16  all of the proposed solutions by various combinations of

17  co-Defendants and the Government, I just don't see a situation

18  where Mr. Carver shouldn't be severed himself and I think the

19  Court can make that determination now.

20          THE COURT:  Okay.  All right.  Mr. Queenan, have we

21  covered everything that was in your motion?

22          MR. QUEENAN:  I believe so, Your Honor.

23          Although, can I briefly address, just briefly Mr.

24  Lowther's last comment there?  Your Honor, severance is

25  premature, very premature on the potential conflict that only

1  arises if a --

2          COURT:  Let me just assure you, I am not ordering any

3  severance right now.  No one has asked for it, first of all.

4  And that would be Judge Cannon's call and, you know, so don't

5  feel the need to address that.  I am not going to --

6          MR. QUEENAN:  I guess, and I want to say I apologize,

7  Your Honor.  I was not present at the last hearing.

8          But to the extent Your Honor is considering some

9  finding that there is a conflict now or this warrants

10  disqualification with Mr. Lowther, we think that is also

11  premature.

12          I mean, this is not going to vest unless Attorney

13  Sztyndor takes the stand.  I can't predict the future.  I think

14  it is a very thin, very minimal chance that she would ever take

15  the stand in this case.

16          And so to sever the case in anticipation of something

17  that is like not a high probability would be an issue.  To

18  disqualify Mr. Lowther would be to either delay trial or cause

19  severance.

20          Additionally, my understanding there is local counsel

21  with Mr. Lowther in this case.  So in the event that Miss

22  Sztyndor did testify in that low probability, there could be a

23  scenario in which it is fashioned that co-counsel is handling

24  that examination.

25          And again, Your Honor, I don't know how that would be

1  antagonistic because, again, I wasn't at the last hearing, but
2  if Mr. Sadow called Miss Sztyndor in support of Thomas
3  Dougherty's defense, I am not sure why Louis Carver would want
4  to cross-examine her and impeach her character and credibility.
5  I am not sure how that would help Louis Carver's defense.
6          So I still think it is a thin scenario that we are
7  going to have a conflict.  I appreciate that it could rise, but
8  there are scenarios not as great as disqualification.
9          THE COURT:  Okay.  All right.  Is there anybody else
10 that would like to speak to any issue?
11         Mr. Adler, you are in person and you are the only one
12 who has not spoken.  So I want to make sure you have a chance
13 or Miss McCrae?
14         MR. ADLER:  Judge, I think we are good.
15         THE COURT:  Okay.  All right.  Anyone else on the line
16 that wants to say anything else about this motion?
17         MR. SADOW:  Your Honor, Steve Sadow.
18         Do you want to hear anything else on the severance
19 aspect of it that was just addressed by Mr. Queenan or do you
20 want to keep it as it is?
21         THE COURT:  Well, you know, let me hear it since we
22 are all here and I will have the benefit of your thought.
23 Obviously that issue is not before me, but looking down the
24 road, let me hear what your thought is.
25         MR. SADOW:  Well, I think Mr. Queenan limits this to

1    what the defense does.  Let's change the scenario somewhat.

2           Let's assume, for the sake of discussion that we go

3    with the advice of counsel defense and Mr. Dougherty chooses to

4    testify and testifies to his communications with Miss Sztyndor

5    and Miss Sztyndor is not called as a defense witness.

6           The Government will then be in a position to call her

7    as a witness, potentially for rebuttal, should they choose to

8    do so.  And that puts us right back in the situation as Mr.

9    Lowther and his client, in which he has to make a decision as

10   to what to do vis-à-vis Miss Sztyndor.

11          And not that I expect this to happen, but what if Miss

12   Sztyndor says, you know what Mr. Dougherty just testified to is

13   not true.  He is not telling the truth.  I told him entirely

14   something different.

15          And Mr. Lowther, on behalf of his client, Gino Carver

16   says, wait, I need to do something with this because this is

17   not helpful because I am in a co-Defendant trial and I now have

18   a situation where an attorney is giving information against the

19   co-Defendants in general and arguably my client.

20          We are right back in the situation.  So it is just not

21   quite so simple as what the Defense chooses to do.  The whole

22   purpose here for the Government to pursue this attorney/client

23   privilege argument is to be able to talk to Miss Sztyndor, or

24   Mr. Fousek, or other lawyers.

25          So to suggest that the Government then won't do

1  something with it?  I suggest if there were to put this

2  (inaudible) they intend to try to do something with it that

3  puts Gino Carver right back in the same position as potential

4  severance as well as Daniel Carver as well as Goyos.

5          So I just wanted to put that that it is just not what

6  the Defense does.  It is what the Government chooses to do.

7          THE COURT:  All right.  I understand.

8          Okay.  Last time going around, does anyone want to say

9  anything else?  All right.  Hearing nothing then, I am going to

10  take this under advisement.

11         Stephanie, do you have something?

12         All right.  I understand that we want to do some

13  arraignments as well.  Who wants to?  Everybody?

14         Okay.  Then let's go one-by-one.  Let's see.  So all

15  five Defendants are ready to be arraigned on -- four

16  Defendants?  Daniel Carver is in custody.  So we have four

17  Defendants to be arraigned on -- which indictment is it,

18  superseding?  On the superseding indictment.  All right.  So

19  let me start with counsel for Thomas Dougherty.

20         Can you represent to me that you have gone over the

21  charges with your client such that he is familiar with them and

22  you have gone over the penalties as well and he is familiar

23  with the charges set forth in the superseding indictment?

24         MR. SADOW:  He is, Your Honor.

25         THE COURT:  All right.  You can arraign him, please.

1           MR. SADOW:  Mr. Dougherty, I think is still -- I don't

2   see his video, but I think he is still on the line.

3           THE COURT:  Okay.

4           MR. SADOW:  There we go.

5           THE COURT:  All right.  You can arraign him, please.

6   Who is doing the arraigning?

7           MR. SADOW:  We will waive formal reading of the

8   indictment and assert trial by jury.  We will watch Alyssa do

9   it first maybe.

10           THE COURT:  Well, how do you plead guilty or not

11  guilty?

12           THE DEFENDANT:  Not guilty.

13           THE COURT:  All right.  And do you waive formal

14  reading of the charges?

15           MR. SADOW:  He does, Your Honor.

16           THE COURT:  All right.  And demand, I guess, the

17  standing discovery order has already been entered and you

18  demand trial by jury, correct?

19           MR. SADOW:  He does.

20           THE COURT:  All right.  So I will accept the waiver of

21  the formal reading.  We will enter a plea of not guilty on all

22  charges.  The standing discovery order has already been entered

23  and we will note your demand for a jury trial.

24           All right.  Let's go to Mr. Gosney.  Who is his

25  counsel, again?  And I apologize.

1      MS. SILVAGGI:  Alyssa Silvaggi on behalf of Mr. Gosney

2  and he is present.  I don't know if his video is working, but

3  he is present.

4      THE COURT:  All right.  And can you represent to me

5  that you have gone over the charges in the superseding

6  indictment.  He is familiar with the charges as well as the

7  potential penalties.

8      MS. SILVAGGI:  Yes, Your Honor.

9      THE COURT:  All right.  You can arraign him, please.

10      MS. SILVAGGI:  Your Honor, at this time we waive

11  formal reading of the indictment, enter a not guilty plea,

12  demand a trial by jury, and request entering the standing

13  discovery order.

14      THE COURT:  All right.  The record will reflect a plea

15  of not guilty on all charges.  We will accept your waiver of

16  the formal reading.  We will note your demand for a jury trial.

17  And to the extent the standing discovery order has not been

18  entered, it will be entered.

19      All right.  Mr. Louis Carver, counsel for him, can you

20  represent to me that you have gone over the charges in the

21  superseding indictment and that he is familiar with the charges

22  and the potential penalties?

23      MR. LOWTHER:  Yes, Your Honor.

24      THE COURT:  All right.  You can go ahead and arraign

25  him, please.

1          MR. LOWTHER:  Your Honor, Mr. Carver waives formal

2    reading of the indictment, enters a plea of not guilty, demands

3    for trial and asks that the standing order be entered.

4          THE COURT:  All right.  We will accept the plea of not

5    guilty on all charges.  We will accept your waiver of the

6    formal reading.  The standing discovery order will be entered

7    to the extent it has not already been done so and we will note

8    the demand for trial by jury.

9          And finally, Mr. Goyos, Mr. Adler, you can represent

10   that you have gone over the charges in the superseding

11   indictment.  He is familiar with the charges and the penalties.

12         MR. ADLER:  Yes, Your Honor.

13         We will waive reading of the superseding indictment,

14   enter a plea of not guilty, demand trial by jury, and request

15   the entry of the standing discovery order to the extent it has

16   not otherwise been entered.

17         THE COURT:  All right.  We will accept the waiver of

18   the formal reading of the indictment.  Enter a plea of not

19   guilty on all charges.  Note your demand for a jury trial and

20   will enter the standing discovery order if it has not already

21   been entered.

22         All right.  Stephanie, is there anything else we need

23   to cover?

24         THE COURTROOM DEPUTY:  No, Judge.

25         THE COURT:  All right.  Anything else from anybody for

1   the good of the order?

2          All right.  I will take this matter under advisement.

3   Thank you, everyone.

4          MR. ADLER:  Thank you, Your Honor.

5          MR. FELDMAN:  Thank you, Your Honor.

6          MR. QUEENAN:  Thank you, Your Honor.

7          MR. SADOW:  Thank you, Your Honor.

8          MS. SILVAGGI:  Thank you, Your Honor.

9          (Thereupon, the proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5   accurate transcript of the audio recorded proceedings in the

6   above-entitled matter.

7

8

9

10  08/14/23                       Bonnie Joy Lewis,
                          Registered Professional Reporter
11                          CASE LAW REPORTING, INC.
                          7001 Southwest 13 Street,
12                          Pembroke Pines, Florida 33023
                              954-985-8875
13

14

15

16

17

18

19

20

21

22

23

24

25